CORRIE (UNITED STATES v.). See Case No. 14,869.

CORRIGAN (HYDE v.). See Case No. 6,968.

---

## Case No. 3,254.

### Ex parte CORSE.

[1 N. Y. Leg. Obs. 231.]

District Court, S. D. New York. 1843.

BANKRUPTCY—POWER OF DISTRICT COURT—SETTING ASIDE VERDICT.

The district court has the power to set aside the verdict of a jury found under the 4th section of the statute [5 Stat. 443], and to order a new trial in consonance with the rules upon which such new trials are granted in courts of law.

[In bankruptcy. In the matter of Barney Corse.]

W. C. Wetmore and M. S. Bidwell, for bankrupt.

T. Sedgwick and J. W. Gerard, for creditors.

BETTS, District Judge. The issue formed in this case between the bankrupt and his creditors, was tried by a jury under the provisions of the 4th section of the bankrupt act [of 1841 (5 Stat. 443)], and the jury found a verdict against the bankrupt. A motion being made for a new trial by the bankrupt, a preliminary objection is raised on the part of the creditors, that the court has no power, in bankrupt cases, to grant new trials. The objection is rested on two general propositions: (1.) That this being a court of limited jurisdiction, it has no inherent power to grant new trials; and (2.) That in the execution of the bankrupt law, the district judge, acting under a special delegated power, can exercise no jurisdiction not plainly given him by the terms of the act.

The 17th section of the judiciary act (Sept. 24, 1789 [1 Stat. 83]) declares that "all the courts of the United States shall have power to grant new trials in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law." This act gives the equity courts the same authority to order new trials on issues sent to be tried at law, as is exercised by the chancellor in England. Harrison v. Rowan [Case No. 6,141]. It was decided in one of the earliest cases under the bankrupt act by this court—Frisbee's Case [Id. 5,130]—that, in administering this act, the functions of the district court as a court were employed, and that it was not a jurisdiction conferred on the judge as a commissioner in the nature of the appointment, by which the chancellor formerly executed the bankrupt law in England. Every provision of the statute indicates this purpose distinctly. The first section authorizes the decree of bankruptcy in voluntary and compulsory cases, on petition made to the proper court or appropriate court, and the party declared bankrupt at the instance of a creditor, may, by petition to such court, be entitled to a trial by jury before such court. The last clause of the same section demonstrates that when the judge is referred to it is not as the officer presiding in the tribunal, but as the court technically: for it is declared, that "the judge, in his discretion, may direct such trial by jury to be had, etc., etc.," in such manner, and under such directions, as the said court may prescribe and give. The second section again refers to the court, as holding the proceedings in bankruptcy, and the third section directs the estate to pass on a decree of bankruptcy by the proper court, and subjects the judgment of the assignee in setting apart effects for the benefit of the bankrupt to the final decision of the court. The 7th section still more explicitly declares, that all proceedings in bankruptcy shall be had in the district court, etc., and points out minutely the various processes by which the court shall bring the matter to an ultimate determination. The 6th section declares, that the district court shall have jurisdiction in

all matters and proceedings in bankruptcy, the said jurisdiction to be exercised summarily in the nature of summary proceedings in equity. This clause indicates most clearly the purpose of congress to impose upon the district courts, as they are organized, the duty of executing the bankrupt law, and to relieve those courts of the embarrassment of procrastination attendant upon conducting business as law courts merely. it imparts to them in this behalf, the chancery faculty of exercising the jurisdiction summarily in the nature of summary proceedings in equity.

Judges Story, Sprague, Judson and Conkling, have reasoned ably in demonstration of the intent of congress to give full chancery powers to the United States courts in matters of bankruptcy (5 Law Rep. 18, 55, 158 [In re Vila, Case No. 16.941; Ex parte Foster, Id. 4.960; Ex parte Martin, Id. 9,149]) and if this is so, the authority to frame issues and revise the findings of juries thereon, would follow as a necessary incident. But, without deriving the power from that source, it would seem one of the most natural, if not usual methods of exercising a summary jurisdiction in chancery to re-examine a verdict rendered under the direction of the court, and for its information, and to set it aside and order a new trial for adequate cause. Congress plainly contemplated this as a power needful and proper in one instance, for in the 7th section it gives a conclusive effect to a verdict on a contestation of debts, unless a new trial shall be granted, thereby recognizing the power of the court to direct such new trial by an implication of equal form with an express declaration. Nor is this, as supposed by the counsel, referable to a probable trial in the state courts, for "the contestation must be in the proper court, having jurisdiction over the proceedings in the particular case in bankruptcy."

Independent of this view of the subject, I have no difficulty in holding, that the United States courts are empowered to exercise in bankruptcy cases, all their powers as courts, appropriate to the nature of the case, and the proceeding presented for their consideration. It is believed to be a universal rule, that the augmentation of the authority of a court by introducing new matters within its jurisdiction, in no way changes the functions of the court, or the methods by which it performs them. It applies all its accustomed powers to the new subject, and so models its proceedings as to fit them to the character of the additional duties enjoined. The lawgiver understands the existing capacity of his courts, and, in adding to the range of their employment, must be supposed to contemplate, that they will continue the use of their customary powers, unless he specially limits and restricts that use. In enjoining upon the district and circuit courts, to take cognizance of and administer the bankrupt act,

congress must be accepted to intend, that in every particular, not otherwise designated by the statute, those courts should proceed with this new jurisdiction upon the principles appropriate to like process, under any other branch of their powers.

A further analysis of other provisions of the statutes would tend to demonstrate this intent still more fully—those in relation to the adjournment or appeal of matters to the circuit court—the continuance of both courts open at all times, etc.; the first proviso to No. 167, § 1, of May 18, 1842 [5 Stat. 483], furthermore manifests the understanding of congress, that the judges sitting in bankruptcy, were holding their respective courts with all the concomitants of a sitting in term. It prohibits the per diem compensation allowed the officers of the court for attendance upon the district and circuit courts during their sittings, to be so construed as to authorize such payment for their attendance upon those courts whilst sitting for the transaction of the business under the bankrupt law merely or any portion of the time, for which either of the said courts may be held open, or in session by the authority conferred in that law. This discussion has been, however, already sufficiently extended, and I shall here terminate this branch of it, by declaring my opinion that this court has power to set aside the verdict of a jury found under the provisions of the 4th section, and to order a new trial in consonance with the rules upon which such new trials are granted in courts of law.